Mr. Justice Johnson
 

 delivered the opinion of .the Court. — .
 

 The plaintiff here was defendant in the Court below, to an action instituted by the Farmers and Mechanics Bank of Georgetown, on a note made by .him to -W. W. Corcorran &■ Co. and by them endorsed in blank to the Bank.
 

 The record makes out a case for this Court, of which the following is a summary: That W. W. Corcorran & Co. discounted their own notes with this Bank, at thirty days • the Bank, expressly stipulating, that in lieu of money they should receive what they call a' post note of their own, payable at a future day, without interest. -The evidence would make out that the' post notes given for.this discounted note,w,ere at thirty-five days after date; that it is, two days after the discounted note fell due: so that in fact there was no advance of money, although an interest of six per cent, per annum, was taken’ from the’ Coreor-rans, and the post notes of the Bank wer.e proved to be at a discount of one per cent, making one 'and a half per. cent, for thirty days, or eighteen per cent, per annum. The note on which this suit was instituted, was passed to the Bank as a collateral security for the discounted note, and was altogether unaffected wifh
 
 *42
 
 Usury in its origin. The ground on which the right of the iBank is • resisted, is, not that Gaither is discharged from his' contract with W. W. Corcorran & Co., but that the endorsement to the plaintiff below, having been made to secure a note given on an usurious contract, could vest no interest or cause of action, in the endorsee. In order to avoid the pressure of .this defence, in the Court below, the plaintiffs there gave in evidence a,writing, addressed by W. W. Corcorran & Co. to the Bank, bearing date 17th February. 1823,' prior to the institution of that suit, in these words: ‘‘ Please deliver to Thomas Corcórrán what notes of ours may remain in your possession, after the debt due the Bank, for which they are left as collateral security, shall have been paid, or hold the Same subject to his order.” And it' was further shown, that'a few days before the issue was tried below, an adjustment had taken place bétw'een the Bank and Thomas Corcorran, (who was then endorser and assignee of W; W. Corcorran'8c Go.) upon which Gaither’s note had been delivered to Thomas Corcdrran; he then endorsed his name t>n Gaither’s noté, below' that of W. W. Corcorran 8c Co. and thereupon the Bank, before the jury were charged, had the name of Thomas fcorcorran enter-, ed on the do.cket, as the
 
 cestuy que use,
 
 for whom they were-prosecuting their suit, and the jury, it appears, were charged with the causé,■■ according to the exhibition of parties, thus made-upon the docket; that is, to try ah issue between thp-Bank, to the use of Thomas fcorcorran, plaintiff, and Gaither, defendant. .
 

 ..This practice is familiar with the. Maryland'Courts, and when the áction originates in that form, the
 
 cestuy'que use
 
 is regarded is the real party to thé suit.
 

 It is how,contended; that, although substituted at'the eleventh hour, Thomas Corcorran' is tobe regarded in that relation; and ■ under that idea this causo' has' been argued, ds though the question of. usury had been- raised betweén Gaither aád an innocént endorser.
 

 But it is obviously, impossible, in the present action, to pay ■ any regard to Thomas Gorcorran’s interest or claims. The arrangement which -introdufced hisname into the cause, was' too obviously concocted- for the purpose of. rescuing the interests. of the plaintiffs in the record, from- the effects of the defence of usury. • It therefore' can pretend to no-' merit in the administration of justice.-, But if the effects of that - transaction be examined,'without reference to the motive, it is'equally clear, it can’have no bearing upon' the present action. The. interest in, or power over Gaither’s note,-was;only inchoate,-and con tingeh t, - un tilal 1 the debts due-the Bank should hie. paid,-or they otherwise be induced'to relinquish it to him-; and .this did
 
 *43
 
 not take place until long posterior to the institution of the suit, and even after issue joined. '
 

 The Bank sue on their, own interest, declared on their own Tight, and. acknowledge n<? participation with Thomas Cprcor---ran in the interest or„,the action, until the moment when-the cause is going ,'to trial. Tt was, surely then too late to permit them to assume a hew character, or interpose a new party; however liberally this Court might be disposed to' sacrifice the forms and rules of law, to the Maryland practice.
 

 We will, therefore, -put Thomas Qorcorran’s interest out ot view, and will consider the parties, at the commencement of the action, as the ^parties at its close.
 

 This puts the question on the right of an innocent endorser, out of the cause — since-the endorsee of Gaither’s note received the usurious interest,, and the endorser paid it. The only questions on the .point of usury, then, are,
 

 1st, Whether, Gaither, in the relations in which he stood
 
 to
 
 these parties, could set up- the usury in his defence.
 

 ■ 2d,. Áríd-wHether that defence could be set up, after pay-, meiit'.of the note/om which the usury had been,received.
 

 The. objection in the first point, is, that as there was no usury, in the concoction, of Gaither’s contract, he ought not to'be permitted to. avail himself of the usurious contract between the .endorser, and endorsee,' to avoid a debt -lynioh he' justly owes..
 

 And this .is unquestionably true: for the rule cannot be doubted, that if the note be free from usury, in its origin, no subsequent usurious transactions respecting it, can affect it -with- tjie taint of usury, Nor does Gaither propose by this defence, to1 relieve himself from paying the note ; it goes only to his liability to pay it to this individual; and reason,. analogy, and ¿djudged cases,-.will sustain the defence. ' Suppose a note1 given to a woman, who marries, and then endorses it without her husband’s authority; such endorsement-would be void; (1
 
 East,
 
 432,)- and .the endorsee could not recover, yet the husband . and wife may recover.
 

 In a comment on the case of Jones, and Davison,' in Holt’s Reports,
 
 (1 Holt,
 
 256,) an usurious noté is likened to a bill of exchange on a bad. stamp: - If a stamp were necessary to give validity to an iendorsefnent, it- cannot be- doubted that none who claim’ through such1 an endorsement could maintain an action against the drawer. • The endorsement, though actual, was.ineffectual for the purpose of transferring, an interest in the npte. It -was a' void act.
 

 , This case.is' governed by the laws of Maryland : and the Act of Maryland against usixry is in the words of thé Statute of .Ann, It declares, “ All bonds,, contracts, and assurances what
 
 *44
 
 ever, taken on an usurious contract,” to be utterly void. Now the endorsement of a negotiable note creates several contracts; and if, in this case, it could give a right of action against Gaither, the,drawer,^ it ought also to sustain'an action .against W.- W. Corcorran & Co. the endorsers; but against them, it is perfectly clear that an action could not be maintained, for they were parties to the usurious loan.. It follows,-that their endorsement ■ was a void act, and the property, and of consequence,' the right of action, never passed to these plaintiffs.— ■There is a very strong case, on this subject,' which wé belieye was not quoted in argument, to be found in .the. Books to which we usually refer. We mean the case of.Harrison & Hamell,..in Taunton’s Reports, (5 Taunton, 780,) in which the rights of a collateral s,urety to avail himself of usury in the original trarisaOtion, is distinctly recognised, when the contract of the1, collatéral was wholly unaffected by usury. The case' wás reserved for argument, and the whole Court concurred in the legality of the defence. The language of the Judges is strong, and applies.to the case before us. One of them- remarks:— “ That if a .man lends 1000 pounds on an usurious interest, and gets from a third person a collateral security for 8Ó0 pounds Only, without usurious interest, I 'hold that bond is void, not. because it is given for securing usurious interest, but. because if is given fpr enforcing a contract for usurious interest. ” And another , says, “ That if . giving these collateral acceptances would alter the case, it would be a shift or device, by which the statutes of -usury would be defeated:”
 

 With regal’d to the second point, it is mécéssary to 'see the force of the argument ..which would deduce from the payment, of the discounted note, a cure to the tairit.with which the con-, tract of endorsement was affected. The law declares it abso- • lutely void. By what operation, then, is it to be rendered valid by the payment of the discounted note?' It is argued, by the payment and extinguishment of the latter note, the usury is extinct, and as if it had never existed. We cannot perceive how this reasoning can prevail, either in point of. fact or in--ference. • In point of fact, the crime was only consummated by the payment of that note, since the bank thereby incurred a liability under the statute, 'to "be sued for three times the sum paid them; and as to the inference, it seems very difficult to conceive how the payment of the usurious note should operate to confirm'or give birth to. a.con tract which the law declares.never had existence, and was
 
 ab
 
 initio,utterly null and void. There have been cases in .which usurious contracts have-been' cancelled, the ■ usury refunded, and new contraéis substituted free from the taint of- usury; and the law-gives to the offender this
 
 locus penitentiee.-
 
 But there is no analogy between such.a
 
 *45
 
 transaction and that here presented, in which the money loaned has been paid-by the borrower, and only passed into the . vaults of the Bank, to be deposited with- the usurious interest previously taken. We have not heard of the refunding of this. usury í/. and this; at least,'would have been indispensable to removing the taint. But even that would never have given validity to an endorsement, which, in the eye of the law, was, as though > it had never existed.
 

 As the decision on this point disposes ojf the: right of action, and leaves no probability that the cahse will be again brought up to this Court, we deem "it unnecessary to notice any other of the points made in argument.
 

 • The.judgment was reversed, and the cause remanded to the "Circuit Court, with directions to, award a
 
 venire facia
 
 s
 
 de ncko,