312 P.2d 777

James E. REED, Plaintiff and Appellant,

v.

Hepburn T. ARMSTRONG, Defendant and Respondent.

No. 8612.

Supreme Court of Utah.

June 27, 1957.

George E. Birdwell, Salt Lake City, for appellant.

J. Grant Iverson, Salt Lake City, for respondent.

WADE, Justice.

James E. Reed, appellant herein, brought suit to recover the value of about 67,000 shares of stock in the Wyoming Uranium Corporation. Appellant's claim was based on an alleged breach of a written contract entered into between him and Hepburn T. Armstrong, respondent herein, on July 14, 1954, wherein it was agreed that appellant give respondent $2,000 of which $1,000 was to be used to obtain certification, if necessary, from the Atomic Energy Commission for certain mining claims owned by re-

spondent in Wyoming, and if such certification was unnecessary then such $1,000 was to be immediately returned to appellant. The remaining $1,000 was to be used to form a corporation to be called the Wyoming Uranium Corporation for the purpose of exploiting and developing these claims. Respondent agreed to issue to appellant 134,000 shares in such corporation as soon as possible after its formation, unless it became unnecessary to use the $1,000 earmarked for certification by the A. E. C., in that event, if the $1,000 was returned within ten days from the date of the agreement, respondent would be obligated to deliver only 67,000 instead of 134,000 shares. The agreement also stated that it was "based on the assumption of a public offering of stock at .03 per share."

At the trial of the action there was evidence that sometime before July 28, 1954, the parties learned that legislation would be passed making A. E. C. certification unnecessary. Respondent testified that within the ten-day period he learned that A. E. C. certification was unnecessary and he advised appellant of this and told him that the $1,000 which was to have been used for this purpose would be returned to him and he would not get stock for it. However, respondent told appellant that even though the $1,000 would be returned to him and no stock issued to him for that amount still respondent could use more money for land operations. Thereafter appellant gave respondent a check for $1,500 dated July 29, 1954, on the back of which he wrote "Payment of $1,500 or part thereof as needed for 100,000 shares of stock in proposed Wyoming Uranium Co., enlarges agreement 7–14–54." It is not disputed that appellant received 100,000 shares of stock in the company for the $1,500 given respondent as evidenced by this check nor is it disputed that within a few months he also received back from the A. E. C. the $1,000 he had sent it for the account of respondent.

The court found that appellant had agreed that the $1,000 which would not be needed for certification by the A. E. C. could be returned when convenient and need not be returned within the 10 days specified in the agreement and that he would accept 66,666 shares at the rate of 1 1/2¢ a share for the $1,000 of the $2,000 which was to be retained by respondent herein and that the agreement was enlarged by appellant agreeing to give respondent an additional $1,500 for which he was to receive 100,000 shares of stock. The court concluded that in any event the provision that respondent should deliver to appellant 134,000 shares of stock instead of 67,000 shares if the $1,000 was not returned in 10 days in case of nonutilization by the A. E. C. was an agreement for a penalty and therefore unenforceable. We agree.

It is clear from the terms of the contract that it was known by the parties

thereto that half of the money given by appellant might not be needed for its contemplated use and if not so needed and used respondent was obligated to repay that sum to appellant and retain only $1,000 of the original sum for which appellant was to receive only 67,000 shares of stock if the sum was paid within 10 days of the date of the agreement. Within the 10-day period respondent had become obligated to pay that sum to appellant. When he failed to perform his obligation to repay a sum which was certain, the measure of the damages for such breach would ordinarily have been the legal rate of interest allowable for such nonperformance. See 15 Am.Jur. Damages, 462, Sec. 57. The contract, though, calls not only for repayment of $1,000 but also for enough stock which at the agreed value of 1 1/2¢ per share would be the equivalent to a further sum of $1,000 for the failure to pay within the agreed time. Such is an agreement for a penalty and unenforceable, even though no reference is made in the contract to liquidated damages or penalty. As stated in 15 Am.Jur. Damages, 692, Sec. 259:

"In case of a contract for the payment of money simply, a stipulation to pay a fixed sum in default of performance will be regarded as an agreement for a penalty, and not as a covenant for liquidation damages. The reason for this rule is that for the nonpayment of money the law awards interest as damages, and hence, there is no difficulty in ascertaining the damages in such case and they cannot be regarded as unliquidated."

See also Croft v. Jensen, 86 Utah 13, 20, 40 P.2d 198.

Affirmed. Costs to respondent.

McDONOUGH, C. J., and WORTHEN, J., concur.

HENRIOD, J., concurs in the result.

CROCKETT, Justice (concurring).

I concur in affirming the judgment of the trial court based upon the conclusion which seems entirely reasonable from all the circumstances disclosed by the evidence that the parties did not intend that there was to be a forfeiture of 67,000 shares of stock for the mere failure to return the $1,000 within the precise limit of 10 days. The fair import of the agreement, coupled with the conduct of the parties indicates that the extra $1,000 which was to be furnished for the purpose of obtaining certification from the A. E. C. was to be compensated by issuance of 67,000 shares of stock in the Wyoming Uranium Corporation if it were necessary for Armstrong to use the money for that purpose; otherwise, that second $1,000 was to be returned and the stock was not to be issued. The limitation of 10 days was recited in the agreement because the parties understood that a change in the law was imminent and it was assumed that such

294

fact could be ascertained within that time. The use of such $1,000 was not necessary and it was returned to Reed within a reasonable time; the latter had theretofore made no demand for the money, nor did he make any objection to accepting it late when it was tendered. It was only when more than a year had elapsed, and the stock had enhanced in value, that he asserted the demand upon the basis that the $1,000 had not been returned within the 10-day period. Further, there is no indication that he was damaged or even inconvenienced by the late return of the money. Under such circumstances and when the terms of a contract have been complied with, time is not of the essence and no damage or forfeiture can be had for failure to perform exactly within the time recited.